## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                                          )
                                                )
EX PARTE APPLICATION OF                         )
SONA ENTERPRISES DMCC FOR                       )
AN ORDER PURSUANT TO 28                          )    C.A. No.
U.S.C. § 1782 TO OBTAIN                           )
DISCOVERY FOR USE IN                             )
FOREIGN PROCEEDINGS                              )

## DECLARATION OF CALLUM MCNEIL

I, Callum McNeil, declare under penalty of perjury, as follows:

1.      I am a partner with the law firm of Sterlington (BVI) LP. I submit this declaration in support of the *Ex Parte* Application of Sona Enterprises DMCC ("Sona") for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for use in Foreign Proceedings (the "Application").[1]

2.      My firm has been engaged by Sona to assist it in legal proceedings before the Grand Court of the Cayman Islands together with our co-counsel in the Cayman Islands who are KSG Attorneys-at-Law. Whilst I am currently resident in the British Virgin Islands and practising in that jurisdiction, I was admitted as an Attorney at Law in the Cayman Islands in 2008. In addition to BVI matters, I assist clients with Cayman Islands matters as co-counsel with KSG who are based in the

---

[1] Unless otherwise stated, any capitalized term not defined herein has the meaning ascribed to it in the Application.

1

Cayman Islands.

3.      Sona is a minority shareholder in a Cayman Islands company that is Trax Limited (the "Company"). In January 2025 Sona paid $10 million for shares in the Company at a time when I am instructed that the Company had a valuation of $1.6 billion.  Approximately 12 months later, Sona learned that the major and apparently only profitable and valuable asset of the Company has been sold.  Sona only became aware of the asset sale via the press.

4.      Prior to the sale, Sona did receive a notice to shareholders seeking consent to the sale of the asset. Sona voted no. The notice came with a link to the sale agreement but Sona was unable to access the data room to see the sale agreement. Sona does not know how much money the asset was sold for and has no knowledge of the financial position of the Company. Sona's request for information via its letter to the directors dated 27 January 2026 was ignored by them.

5.      Subsequent to the sale, Sona was contacted by a fellow shareholder in the Company who wished to discuss a notice to shareholders of an intention by the directors to place the Company into Voluntary Liquidation (the "VL Notice"). This was the first time that Sona became aware of the VL Notice. Shortly thereafter the former shareholder of the Company from whom Sona had purchased its shares passed on the VL Notice to Sona.  No information has been provided to Sona directly and nor has information been provided to the former shareholder as to the sale

2

process, the asset valuation, the sale price, the proceeds of that sale, the solvency position of the Company or what assets (if any) remain owned by the Company or if any distribution will be made to the shareholders.

6. Due to matters of Cayman Islands law the VL Notice was invalid and ineffective under both the Company's articles of association and also according to the laws of the Cayman Islands. On 4 June 2026 I wrote to the directors and insisted that they must not proceed with their invalid VL Notice. Cayman Islands Counsel for the Company responded to my letter on 5 June stating that the Company did not intend to take any steps to give effect to the VL Notice. Then on Friday 12 June 2026 the directors of the Company issued a notice to the shareholders calling a shareholders' meeting to be held on Wednesday 17 June 2026 where they proposed that the shareholders vote to place the Company into voluntary liquidation. In their notice the directors stated that the Company is likely to be insolvent. If the Company is indeed insolvent, then Sona's entire investment of $10 million has been lost.

7. In response to this, on Tuesday, 16 June 2026 Sona filed a petition (the "Petition") in the Grand Court of the Cayman Islands seeking that the Company be wound up on the grounds that it is just and equitable to do so and sent a letter to Trax's counsel enclosing the same. (A true and correct copy of the Petition is attached hereto as Exhibit A.) By way of short summary, Sona alleges that it is just and equitable to wind up the Company because:

3

a. The directors sought to invalidly place the company into voluntary liquidation. In doing so, the directors have acted unfairly and/or oppressively towards Sona and/or the affairs of the Company have been conducted with a lack of probity, and Sona has further and additionally justifiably lost confidence in the management of the Company.

b. Sona has been denied information to which it is entitled as a shareholder and the affairs of the Company have been conducted in disregard of Sona's legitimate interests as a minority shareholder.

c. There is a need for an independent investigation into the sale of the Company's asset to ensure that it was at fair value and for the interests of the Company and its shareholders as a whole, rather than one group of shareholders. Such an investigation must be by an official court appointed and supervised liquidator due to the invalidity of the directors' purported voluntary liquidation process, their clear intention to ignore the laws of the Cayman Islands and the Company's constitutional documents and its obligations under the separate shareholders agreement and their failure to conduct the affairs of the Company in accordance with good corporate governance standards for the benefit of the Company as a whole.

8.     The Company sold its asset to G-3 Frax Acquisition, LLC, a Delaware limited liability company affiliated with Gemspring Capital. The Company's subsidiary Trax Global Holdings LLC, a Delaware limited liability company, was apparently also a party to the transaction (the "Project Thor Transaction").

9.     If Sona succeeds in its Cayman proceedings, then the court will order that the Company will be in official liquidation, rather than the Voluntary Liquidation that the directors have sought via their VL Notice. An official liquidation must be conducted by an independent third-party professional person who is qualified and regulated in the Cayman Islands as an Insolvency Practitioner and who is supervised by the court. This is in stark contrast with voluntary liquidation which is not supervised by the court and any person anywhere can be the voluntary liquidator.

10.    Sona needs evidence from the following Delaware entities in order to assist in its proceedings, and any subsequent official liquidation, in order to investigate potential claims against the Company's directors and officers relating to the Project Thor Transaction and the Liquidation:

     a.  Gemspring Capital, LLC,

     b.  G-3 FRAX ACQUISITION LLC,

     c.  G-3 FRAX AGGREGATOR LLC,

     d.  G-3 FRAX HOLDCO LLC,

    e.  G-3 FRAX INTERMEDIATE LLC,

    f.  G-3 FRAX PARENT LLC, and

    g.  WorldAPP, Inc.

(together the "Delaware Entities").

11.    The competition between Sona's winding up petition to force a court supervised official liquidation and the directors' efforts to place the company into an unsupervised voluntary liquidation imposes a degree of urgency in its disclosure application because such evidence as might be obtained in the United States will be needed in any future court hearings, which may be urgent if voluntary liquidators are appointed and they attempt to dispose of assets improperly and / or dissolve the Company. Theoretically the Company could be dissolved within 5 weeks of appointment of the voluntary liquidators. After the passage of a further 3 weeks, without further order the Cayman Court would no longer have power to restore the Company. If that were to occur, then all potential for Sona to recover its investment would be lost.

12.    Under the laws of the Cayman Islands, the courts may receive evidence obtained from Section 1782 proceedings.

13.    To the best of my knowledge, there have been no judicial, executive, or legislative declarations that the Cayman Islands would reject the evidence pursuant to this Section 1782 proceeding.

14.    To the contrary, the Grand Court is highly likely to accept and admit evidence obtained pursuant to Section 1782 proceedings and the requested discovery is of the same type that would be available in the Cayman Islands and which will likely be admissible in the Cayman proceedings.

15.    It is my understanding that Sona will not be able to obtain the same discovery from the Delaware Entities in the Cayman proceedings as they seek here.

16.    Relevant documents in the possession, custody, or control of the Delaware Entities are not within the Grand Court's jurisdictional reach.

17.    Sona intends to use the requested discovery obtained pursuant to 28 U.S.C. § 1782 for use in the Cayman proceedings before the Grand Court.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Callum McNeil
Sterlington (BVI) LP
N° 90 Main Street,
Road Town, Tortola
British Virgin Islands VG1110
callum.mcneil@sterlingtonlaw.com

Dated:    June 18 , 2026
British Virgin Islands

7